E-FILED

Thursday, 08 March, 2007  02:20:16 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RONALD VOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3022 |
| | ) | |
| DONALD KLIMENT, Chief of | ) | |
| Police of the City of Springfield, in | ) | |
| his individual capacity; and | ) | |
| WILLIAM ROUSE, Deputy Chief | ) | |
| of Police of the City of Springfield, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Donald Kliment and William Rouse's Motion to Dismiss (d/e 17).  The Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the Defendants' Motion is DENIED.

## BACKGROUND

Plaintiff Ronald Vose has filed a two-count Complaint (d/e 1), alleging violations of 42 U.S.C. § 1983 based on injuries resulting from

deprivations of his First and Fourteenth Amendment rights.  In Counts 1 and 2, Vose contends that Defendants retaliated against him for exercising his First Amendment rights to freedom of speech in violation of his First and Fourteenth Amendment rights.  On Defendants' Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to the non-moving party. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  The allegations set forth in the Complaint are as follows.  Defendant Kliment is Chief of Police in the Springfield Police Department (Department).   Defendant Rouse is Deputy Chief of Police in the Department.   In that capacity, Rouse is responsible for overseeing the Department's investigations division.  Defendant Rouse reports to Assistant Chief of Police Ralph Caldwell and to Defendant Kliment.

At all times relevant to this case, Plaintiff Ronald Vose was a police officer in the Department.  As of 2004, Vose was a 26-year veteran of the Department with over 13 years of narcotics related experience.  In July 2002, Vose was promoted to Sergeant in the narcotics unit of the Department.  Vose was a supervisor of the narcotics unit and reported

directly to Lieutenant David Dodson, who in turn reported to Defendant Rouse.

Sometime before the summer of 2004, Vose learned that several detectives in the major case unit, which was separate from the narcotics unit, "were using alleged drug investigations as a means to gather evidence by allegedly searching the trash from a specific residence or specific location in order to have a lawful basis to obtain search warrants for the specific residence or specific location.  This search technique was and is commonly referred to as 'trash rips.'"  Complaint, ¶ 16.

Vose became concerned that this practice could not only potentially compromise on-going drug investigations being conducted by the narcotics unit, but also increase the lack of coordination between the activities of the major case unit and the narcotics unit.  Based on these concerns, Vose reviewed various search warrant applications previously prepared by the major case unit detectives and the corresponding warrants issued by judges based on such applications.  Following his review, Vose learned that the major case unit detectives were: (1) failing to follow the Department's proper procedures for obtaining search warrants; (2) violating laws applicable to the search warrant process; (3) filing factually inaccurate,

misleading, or false affidavits with the courts in support of their applications for search warrants; (4) claiming the use of confidential sources who had not been registered with the Department in accordance with established practices of the Department; (5) using the information obtained from these confidential sources as the basis for search warrant applications prepared by the detectives; and (6) using the obtained searched warrants for purposes of gathering information on drug investigations even though no such drug investigations were being undertaken by the narcotics unit.  Vose also became concerned that "the drug investigations were pretextual, were not always based upon probable cause and were apparently being used for purposes of obtaining information related to other crimes for which there was no basis to obtain a search warrant."  Complaint, ¶ 22.

Vose aired his concerns to his immediate supervisor, Dodson, as well as to Defendants Rouse and Kliment.  Defendant Kliment assured Vose that the matter would be addressed.  Neither Defendant Kliment nor Defendant Rouse, however, did anything to address the matter.  In the fall of 2004, Vose continued to express his concerns about the improper way in which the major case unit detectives were carrying out their official duties (including their use of improper techniques to obtain search warrants and

their failure to properly document cash payments to the undocumented sources) in department meetings, during which time Defendant Rouse was present.

On November 16, 2004, Vose informed Defendant Rouse that the major case unit detectives, about whom Vose had previously complained, were scheduled to testify at the Sangamon County courthouse in a trial involving Defendant Anthony Grimm.  Vose further advised Defendant Rouse that their testimony may be problematic and that Rouse should attend the trial.  Defendant Rouse directed Vose to attend the Grimm trial instead and instructed Vose to report back to him.  In accordance with Defendant Rouse's instructions, Vose attended the trial.  During the trial he learned that documents in the possession and control of the Springfield Police Department had not been turned over to the defense prior to trial, including documents in the files of one of the detectives.

During Vose's attendance at the trial, one of the detectives approached Vose and questioned whether Vose was working for the defense in the Grimm trial.  Vose attended the trial for the sole purpose of reporting his observations of the trial proceeding to Defendant Rouse. Vose informed Defendant Rouse that one of the detectives had accused him of working for

the defense in the <u>Grimm</u> case.  Sometime later, Defendant Rouse informed Vose that the detectives present at the trial and their supervisor were in the process of initiating an internal affairs complaint against him based upon the events that transpired in the courtroom during the <u>Grimm</u> trial.  On November 30, 2004, Vose was served with an internal affairs complaint concerning the incident at the courthouse.

Sometime after Vose had aired his concerns regarding the wrongdoing, Defendant Rouse began interfering in the operation of the narcotics unit by revising work schedules and assigning an additional Sergeant in the unit, who was to be responsible for "administrative matters." <u>Complaint</u>, ¶ 35.  This Sergeant not only had limited narcotics experience, but he also had no experience as a narcotics supervisor.  Vose believes that the aforementioned employment actions were undertaken with the knowledge and consent of Defendant Kliment.

In December 2004, Vose received a letter from Defendant Rouse instructing him to prepare a memorandum summarizing the alleged instances of wrongdoing by the major case unit detectives.  Prior to this time, Defendant Rouse had not done anything to address the matters previously raised by Vose.  At that time, Vose was planning to take an

approved vacation leave from December 18, 2004, until January 3, 2005.

Vose therefore notified Defendant Rouse through e-mail, which was carbon

copied to Defendant Kliment, that he would prepare the requested

memorandum upon his return. Vose was on vacation from December 18,

2004, until January 3, 2005. On December 20, 2004, while Vose was out

on leave, Defendant Kliment issued a directive revising the work schedule

of the narcotics unit effective January 1, 2005.

On February 14, 2005, Vose informed Defendant Rouse that he

intended to deliver his memorandum to Defendant Kliment directly. Vose

planned to indicate in his memorandum that Defendant Rouse had failed

to address Vose's prior complaints concerning the major case unit detectives.

On February 23, 2005, during an internal affairs investigation against Vose,

Vose was questioned about his involvement in the <u>Grimm</u> case and his

reporting of information to his superior officers about the detectives. "On

February 24, 2005[,] a newspaper article was published regarding the

allegations of misconduct and alleged perjury by the detectives."

<u>Complaint</u>, ¶ 44.

On March 2, 2005, Vose advised Defendant Kliment through e-mail

that his memorandum would be completed shortly. Vose subsequently

hand-delivered his memorandum, detailing instances of wrongdoing by the major case unit detectives, and at that time he discussed with Defendant Kliment the substance of his memorandum. At one point in the discussion, Defendant Kliment assured Vose that he would not be transferred to another unit unless he made such a request. A newspaper article was again published, on March 3, 2005, implicating wrongdoing by one of the detectives about whom Vose had earlier complained.

Since January 1, 2005, Vose had been responsible for supervising all searches undertaken by the narcotics unit personnel. This, however, changed. Between the time of Defendant Rouse's appointment of the administrative Sergeant to the narcotics unit and Vose's submission of his memorandum, two questionable drug searches were conducted by the administrative Sergeant and the narcotics unit personnel without Vose's knowledge or consent. The first drug search, which was carried out by the administrative Sergeant and the narcotics unit personnel, resulted in an unlawful execution of an anticipatory search warrant. The second drug search, in which the administrative Sergeant participated, was conducted on the basis of a search warrant obtained by the major case unit detectives about whom Vose had previously complained.

Even after Vose's submission of his memorandum, neither Defendant Kliment nor Defendant Rouse did anything to address the matters raised by Vose, and Vose continued to be under investigation for his conduct at the courthouse during the <u>Grimm</u> trial.  On April 12, 2005, Vose met with Defendants Kliment and Rouse, as well as Lt. Rickey Davis and Sergeant Kurt Banks.  At the conclusion of the meeting, Kliment instructed Vose either to get along with the major case unit detectives about whom Vose had complained or to submit a transfer request to the patrol division by April 15, 2005.  Due to his concern that Defendants Kliment and Rouse were going to continue to cover up his complaints about the detectives, Vose met with and expressed his concerns to City of Springfield Mayor Timothy Davlin.  On April 14, 2005, Vose met with Mayor Davlin and informed him about the matters he had previously raised to his supervisor, the two Defendants, and other Department personnel regarding instances of misconduct by the major case unit detectives.  Vose believes that Mayor Davlin informed Defendant Kliment of the April 14, 2005, meeting.

In accordance with Defendant Kliment's instructions, Vose submitted a memorandum on April 15, 2005 (April 15, 2005, Memorandum), protesting his unsolicited transfer to the patrol division.  On

April 18, 2005, Vose found in his office two empty cardboard boxes with his name on the outside.  Vose believes that the intended message of this incident was that he would be involuntarily transferred to the patrol division.

On April 19, 2005, Defendant Rouse issued a written reprimand to Vose for the alleged untimely submission of the April 15, 2005, Memorandum and instructed him to sign the issued reprimand.  In response, on April 25, 2005, Vose sent a memorandum to Defendant Kliment protesting the reprimand.  On April 27, 2005, pursuant to a directive of Defendant Kliment, Vose was transferred to the patrol division, which became effective May 1, 2005.  Defendant Rouse notified Vose of this directive.  At the patrol division, Vose was assigned to the second shift which operated from 2:30 p.m. to 11:30 p.m.  At the time of his transfer, Vose had not performed patrol duties for the past seven years.  His position at the patrol division was a less desirable position than the supervisory position he had held at the narcotics unit.

On May 17, 2005, Vose was issued a written reprimand relating to his alleged misconduct at the courthouse during the Grimm trial.  Following the transfer, Vose learned that a command officer had expressed to others

in the Department that Vose's "'career in CID [criminal investigation division] is history' and that VOSE 'had burned bridges'." <u>Complaint</u>, ¶ 58.

The events leading up to the involuntary transfer, as well as the transfer itself, communicated to Vose that he had no credibility with his superior officers, which in turn, made his continual employment with the Department intolerable. Vose therefore felt forced to resign his employment. Vose accordingly resigned on January 19, 2006.

Vose claims in Counts I and II that Defendants Kliment and Rouse retaliated against him for exercising his First Amendment rights to freedom of speech by: (1) interfering with the operation of the narcotics unit; (2) issuing two written reprimands, one for the alleged untimely submission of the April 15, 2005, Memorandum and the other for the alleged misconduct during the <u>Grimm</u> trial; and (3) transferring/demoting him to the patrol division.

<u>ANALYSIS</u>

The Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint should not be dismissed, under Rule 12(b)(6), for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief.  <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996).  The plaintiff is required only to provide a short and plain statement of his claim "'that will give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Fed. R. Civ. P.</u> 8(a); <u>see also</u> <u>Lucien v. Preiner</u>, 967 F.2d 1166, 1168 (7th Cir. 1992).  Indeed, the complaint need not plead facts, but must provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Conley</u>, 355 U.S. at 47.  For the reasons stated below, Defendants' Motion to Dismiss is denied.

To state a First Amendment retaliation claim, "the facts alleged in the complaint must show that (1) the speech in which the plaintiffs engaged was constitutionally protected under the circumstances, and (2) the defendants retaliated against them because of it."  <u>Gustafson v. Jones</u>, 117 F.3d 1015, 1018 (7th Cir. 1997) (citing <u>Caldwell v. City of Elwood, Ind.</u>, 959 F.2d 670, 672 (7th Cir. 1992)).  The Supreme Court has established a two-part inquiry to determine if speech is constitutionally protected.  <u>Pickering v. Bd. of Educ. of Township High Sch. Dist. 205</u>, 391 U.S. 563

(1968); <u>Connick v. Myers</u>, 461 U.S. 138 (1983).  First, the court must determine whether the plaintiff's speech touched upon a matter of public concern, which means that the speech raises issues of political, social, or other concern to the community.   <u>Gazarkiewicz v. Town of Kingsford Heights, Indiana</u>, 359 F.3d 933, 940-41 (7th Cir. 2004).  Speech made pursuant to a public employee's official job duties, however, is not speech implicating matters of public concern.  <u>Delgado v. Jones</u>, 282 F.3d 511, 518 (7th Cir. 2002); <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951, 1960 (2006). Additionally, speech that furthers purely private interests, including communications made to improve an employee's working conditions, or that concerns a personal employee grievance is not entitled to protection under the Constitution.  <u>Gazarkiewicz</u>, 359 F.3d at 941; <u>Gustafson</u>, 117 F.3d at 1019; <u>Phares v. Gustafsson</u>, 856 F.2d 1003, 1008 (7th Cir. 1988).

If the answer to the first inquiry is yes, then the second step of the analysis requires the courts to balance the employee's interest in speaking and the employer's interest in efficient public services.  <u>Pickering</u>, 391 U.S. at 568; <u>Gazarkiewicz</u>, 359 F.3d at 940.  The application of the balancing test is normally possible only after some discovery has been conducted, and so such analysis is not appropriate at the motion to dismiss stage.

Gustafson, 117 F.3d at 1019.  The Court therefore does not address the second step of the balancing test.

To determine whether the speech at issue falls within the parameter of public concern, the Court must evaluate the content, form, and context of the speech in question, and of these factors, the content of the speech is the most important factor.  Delgado, 282 F.3d at 516-17; Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004).

With these principles in mind, the Court turns to the merits. Defendants move to dismiss on the grounds that: (1) Vose has failed to allege that the speech in question touched upon matters of public concern because the speech was made pursuant to Vose's official duties; (2) Vose has failed to allege an adverse employment action sufficient to state a claim for § 1983 retaliation; (3) Vose has failed to sufficiently state a claim for constructive discharge; and (4) the instant action is barred by the doctrine of qualified immunity.  The Court addresses each of the arguments in turn.

A.   Matter of Public Concern

With respect to content of Vose's speech, the allegations of the Complaint support a finding that the speech in question addressed a matter of public concern.  The Seventh Circuit has stated that, in terms of content, speech concerning police protection and public safety raises a matter of public concern.  Delgado, 282 F.3d at 517 (citing Auriemma v. Rice, 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc)).  Indeed, "[e]ffective police work would be hopelessly compromised if police officers could be retaliated against for communicating factual details . . . that bear on the [police] department's ability to conduct an objective investigation."  Id. at 519.  The Seventh Circuit has further noted that the best way to protect the public from unscrupulous and wayward public employees that abuse their positions is the insider who sheds light on his colleagues' improprieties.  Spiegla, 371 F.3d at 937.

The Complaint alleges that Vose was a supervisor of the narcotics unit.  Vose alleges that he discovered wrongdoing by the detectives who worked in a different unit, which he believed should be brought to light and addressed.  The Complaint alleges that, based on Vose's own investigation of the matter, Vose concluded that the major case unit detectives were: (1)

failing to follow the Department's proper procedures for obtaining search warrants; (2) violating laws applicable to the search warrant process; (3) filing factually inaccurate, misleading, or false affidavits with the courts in support of their applications for search warrants; (4) claiming the use of confidential sources who had not been registered with the Department in accordance with established practices of the Department; (5) using the information obtained from these confidential sources as the basis for search warrant applications made by the detectives, and (6) using the obtained search warrants for purposes of gathering information on drug investigations, even though no such drug investigation was being undertaken by the narcotics unit.  Vose alleges, essentially, that he acted as a whistleblower, shedding light on instances of wrongdoing by his colleagues.  "Certainly, a communication by a law enforcement officer that contains information essential to a complete and objective investigation of serious criminal activity is 'content' that implicates public concern." Delgado, 282 F.3d at 517-18.

Moreover, Vose alleges that two newspaper articles were published implicating wrongdoing by the same detectives about whom Vose had complained.  "While not dispositive of whether speech relates to a matter

of public concern, the fact that the press takes interest in the matter is relevant to the determination." Spiegla, 371 F.3d at 936 (citing Gustafson v. Jones, 290 F.3d 895, 907 (7th Cir. 2002)).  Vose has therefore adequately alleged in his Complaint that the content of his speech addressed a matter of public concern.

Turning to the form and context of Vose's speech, the Court finds that the allegations of the Complaint further support a finding that Vose spoke out on a matter of public concern.  The form and context of the speech in question can be clarified by an examination of Vose's motive for speaking.  Delgado, 282 F.3d at 518; see Spiegla, 371 F.3d at 938 ("Motive matters to the extent that even speech on a subject that would otherwise be of interest to the public will not be protected if the expression addresses only the personal effect upon the employee.").  Vose alleges in his Complaint that following his independent investigation, he concluded that the detectives working in a different unit were engaging in improper conduct which, if allowed to continue, would hinder objective investigations of criminal matters involving illegal drugs.  The Complaint alleges that he therefore voiced his concerns to various superior officers, including Defendants Kliment and Rouse.  The Complaint further alleges that, at the

request of Defendant Kliment, Vose prepared a memorandum detailing instances of wrongdoing by the major case unit detectives in carrying out their official duties.  The Complaint asserts that due to the Defendants' failure to resolve the matters raised by Vose, Vose publicized his concerns to the Mayor.  The allegations of the Complaint, therefore, show that Vose was not speaking out solely to further his personal interests, to improve his work environment, or to seek redress for a personal grievance against a co-worker or supervisor.  Delgado, 282 F.3d at 518.  Rather, the allegations in the Complaint show that Vose spoke out as a concerned citizen regarding the improper ways in which the major case unit detectives were carrying out their official job duties.  Therefore, the allegations in the Complaint show that the form and context of Vose's speech touched upon a matter of public concern.

Vose has also sufficiently alleged in his Complaint that he was subjected to retaliatory employment actions as a result of his speech.  The Complaint alleges that Defendants Kliment and Rouse retaliated against Vose for exercising his First Amendment rights to freedom of speech by: (1) interfering with the operation of the narcotics unit; (2) issuing two written reprimands; (3) transferring/demoting him to the patrol division; and (4)

forcing him to resign by making his working conditions intolerable.   In viewing the allegations of the Complaint in the light most favorable to Vose, the Court concludes that Vose's Complaint sufficiently states a First Amendment retaliation claim.

Defendants, however, argue that Vose's Complaint fails to state a claim because Vose's speech concerned "matters which fell squarely within his official job duties as a Sergeant." Defendants' Memorandum in Support of Defendants' Motion to Dismiss the Complaint (d/e 18), at 3.  In support of their assertion, Defendants rely on Garcetti in which the Supreme Court held, as noted supra, that a public employee's speech is not entitled to constitutional protection if the speech at issue was made pursuant to the employee's official job duties. Garcetti, 126 S.Ct. at 1960.  In reviewing the allegations of the Complaint, the relevant case law, and the facts involved in Garcetti, the Court finds that Garcetti is distinguishable from this case.

The plaintiff in Garcetti was a supervising deputy district attorney who complained that he had suffered retaliatory employment actions for speaking out on a matter of public concern.  The Garcetti plaintiff was a calendar deputy responsible for supervising other lawyers.  A defense attorney contacted the plaintiff about a pending criminal case, complaining

that there were inaccuracies in an affidavit used to obtain a search warrant. As a result, the plaintiff investigated this matter during which time he found that the affidavit in question contained several inaccuracies.  The plaintiff therefore prepared a memorandum explaining his findings to his superiors and recommended that the case be dismissed.  The plaintiff's supervisor, however, disagreed with the plaintiff.  The plaintiff then brought suit alleging that he was subjected to various retaliatory employment actions as a result of his speech.  The Supreme Court explained that the plaintiff's speech did not involve a matter of public concern, because "[he] spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case . . . ."  Garcetti, 126 S.Ct. at 1960.  The Supreme Court emphasized the fact that the plaintiff wrote the memorandum as part of his duty as calendar deputy, and noted that "[i]t [was] immaterial whether [the plaintiff] experienced some personal gratification from writing the memo . . . ."  Id.

Unlike Garcetti, however, the allegations in the instant Complaint are sufficient to support a finding that Vose did not simply speak as a police officer fulfilling his job responsibility, as opposed to a citizen seeking to expose instances of wrongdoing by his colleagues who worked in a different

unit.   The Complaint does not demonstrate that Vose's speech was motivated purely by a desire to advance his own private interests.   The allegations in the Complaint show that Vose independently investigated the matter and came to the conclusion that several detectives in another unit were engaging in improper conduct, both when carrying out their official investigative duties and when testifying at the <u>Grimm</u> trial.   His initial statements to Dodson, Rouse and Kliment, and his subsequent statements to Mayor Davlin, were not all part of his routine official duties.[1]   If true, the allegations in the Complaint are enough to show that Vose's speech was not purely about personal matters or about those that fell squarely within Vose's official duties.   For these reasons, <u>Garcetti</u> is distinguishable from this case. Defendants' request to dismiss on this basis is denied.

B.   <u>Adverse Employment Action</u>

Defendants next argue that Vose fails to allege an adverse employment action sufficient to state a claim for § 1983 retaliation. Defendants contend that the retaliatory employment actions alleged in the

---

[1]The Court notes that Vose's statements to Kliment and Rouse following his attendance at the Grimm trial, and related to that trial, may well fall within his official duties.  However, more factual background is necessary before the Court could say that those allegations should be dismissed.  Defendants may re-raise this argument again at summary judgment if the evidence supports their position.

Complaint are not enough to constitute an adverse employment action.  In support of their assertion, Defendants cite two Title VII cases: (1) O'Neal v. City of Chicago, 392 F.3d 909 (7th Cir. 2004) (Title VII gender and race discrimination case); and (2) Ribando v. United Airlines, Inc., 200 F.3d 507 (7th Cir. 1999) (Title VII sexual harassment case).

However, the Seventh Circuit has explained that "a § 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964.  Rather *[a]ny* deprivation . . . that is likely to deter the exercise of free speech . . . is actionable."  Spiegla,  371 F.3d at 941 (internal quotations and citations omitted).  That is, even minor harassment, including ridiculing an employee for bringing a birthday cake to the office, may be sufficient to deter the exercise of First Amendment rights. Id. (citing Bart v. Telford, 677 F.2d 622, 624 (7th Cir. 1982)).  Here, the Complaint alleges that in retaliation for voicing his concerns, both orally and in writing, about the wrongdoing by the major case unit detectives, Vose was subjected to the following retaliatory employment actions by Defendants Rouse and Kliment: (1) interference with his job duties as a supervisor of the narcotics unit;  (2) issuance of two written reprimands; (3) internal affairs

investigation; (4) demotion/transfer to a position in the patrol division; and (5) constructive discharge. The alleged employment actions are sufficient to support a First Amendment retaliation claim. Defendants' request to dismiss on this basis is denied.

C.  Constructive Discharge

Defendants next argue that Vose has failed adequately to allege a claim for a constructive discharge. The Court notes that Vose does not bring a separate cause of action for constructive discharge in his Complaint. However, to the extent that Vose alleges that he was constructively discharged in retaliation for speaking out on a matter of public concern, the Court finds that the alleged employment action is sufficient to state a basis for a First Amendment retaliation claim. The doctrine of constructive discharge means that the employee felt compelled to resign because the working conditions became so intolerable. Levenstein v. Salafsky, 414 F.3d 767, 774 (7th Cir. 2005); Carlson v. Midway R-1 School Dist., 53 F.3d 878, 880 (8th Cir. 1995). As explained supra, in § 1983 cases any employment action that may deter the exercise of First Amendment rights would be sufficient to support a First Amendment retaliation claim. Vose alleges in his Complaint that the various retaliatory employment actions to which he

was subjected, including the written reprimands, interference with his job duties, and demotion/transfer to the patrol division, made his continual employment with the Department intolerable and forced him to resign from the Department because he felt that he had no credibility with his superior officers. The alleged employment action is sufficient to support a First Amendment retaliation claim. Defendants' Motion to Dismiss on this basis is denied.

### D.  Qualified Immunity

Defendants lastly argue that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 US. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The Supreme Court directs that a federal court considering a defense of qualified immunity must follow a two-step analysis. First, the court must rule on "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?  This must be the initial inquiry."  <u>Saucier</u> <u>v. Katz</u>, 533 U.S. 194, 201 (2001).   As discussed <u>supra</u>, Vose has adequately alleged that the Defendants retaliated against him for exercising his First Amendment rights in violation of his First and Fourteenth Amendment rights.

The second step of the analysis then, "is to ask whether the right was clearly established."  <u>Id.</u>  A right is clearly established if "it would be clear to a reasonable officer that [his] conduct was unlawful in the situation he confronted."  <u>Id.</u> at 202.  Before the events at issue here, the Seventh Circuit, in 1997 and 2002, stated that a police officer, who speaks out to expose problems in the operation of a police department or corruption in the police department, is entitled to constitutional protection.  <u>Gustafson</u>, 117 F.3d at 1019; <u>Delgado</u>, 282 F.3d at 519.  The Seventh Circuit has also stated, before the events at issue here, that a § 1983 case does not require an adverse employment action within the meaning of Title VII.  <u>Bart</u>, 677 F.2d at 624; <u>Spiegla</u>, 371 F.3d at 941.  Even ridiculing an employee for bringing a birthday cake to the office may deter the exercise of the employee's First Amendment rights.  <u>Bart</u>, 677 F.2d at 624.

Vose alleges that: (1) based on his independent investigation, he

25

discovered that the detectives working in a different unit were engaging in improper conduct, both when carrying out their job duties and when testifying at a trial; (2) he raised these issues, both orally and in writing, to his superior officers (including Defendants Rouse and Kliment), as well as to the Mayor; (3) he was subjected to various retaliatory employment actions, including written reprimands, interference with his job duties, and demotion, as a result of expressing such concerns; and (4) the working conditions became so intolerable that he felt compelled to resign.  Viewing these allegations as true and in the light most favorable to Vose, the Court finds that Vose's right to speak out on matters relating to misconduct of police officers without being subjected to retaliatory employment actions was clearly established before the events of this case.

Defendants, however, argue that they are entitled to qualified immunity because the applicable law, namely the <u>Garcetti</u> ruling issued May 30, 2006, was not clearly established at the time of the events at issue here, which occurred sometime between 2004 and January 19, 2006, the date of Vose's resignation.  Defendants contend that the <u>Garcetti</u> ruling clarified and narrowed the rights of government employees to speak out on issues which are inherently part of their job duties.  The essence of Defendants'

contention appears to be that they are not liable because their alleged conduct did not violate Vose's First Amendment rights, based on <u>Garcetti</u>. However, as discussed <u>supra</u>, qualified immunity protects a public official from liability for civil damages when his conduct did violate another person's constitutional rights, but the applicable law was not clearly established at the time of the events in question so that the official would have reasonably known that his conduct violated a constitutional right. If the Defendants' conduct was legal, then qualified immunity does not apply. <u>Saucier</u>, 533 U.S. at 201. Defendants' argument, therefore, is not consistent with the affirmative defense of qualified immunity.

In any event, Defendants' arguments for qualified immunity based on <u>Garcetti</u> nonetheless lack merit. Before the events at issue here, the Seventh Circuit had held that a public employee's speech made pursuant to his routine job duties was not entitled to protection under the Constitution. <u>Delgado</u>, 282 F.3d at 519; <u>Gonzalez v. City of Chicago</u>, 239 F.3d 939 (7th Cir. 2001). As such, <u>Garcetti</u> neither clarified nor narrowed the rights of government employees to speak out on matters which are inherently part of their job duties, meaning <u>Garcetti</u> did not change the law applicable to First Amendment actions in the Seventh Circuit. Moreover, the alleged

retaliatory actions at issue here, as alleged in the Complaint, all occurred prior to the issuance of the <u>Garcetti</u> decision, thereby "eliminating any possibility of reliance" on <u>Garcetti</u>.   <u>Delgado</u>, 282 F.3d at 520.   The Defendants are, therefore, not entitled to qualified immunity.  Defendants' request to dismiss on this basis is denied.

THEREFORE, for the reasons set forth above, Defendants Kliment and Rouse's Motion to Dismiss (d/e 17) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   March 8, 2007.

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE